# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE, | * **ACTION NO.: 2:19-CV-** |
| | * **13425-WBV-JCW** |
| Plaintiff | * |
| | * **SECTION: "D" DISTRICT** |
| v. | * **JUDGE VITTER** |
| | * |
| THE ADMINISTRATORS OF THE TULANE | * **MAGISTRATE: JUDGE** |
| EDUCATIONAL FUND, | * **WILKINSON** |
| | * |
| Defendants | * |
| | * |

\* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO TAKING DEPOSITIONS OF NON-PARTY STUDENTS AND IN EXCESS OF TEN

Plaintiff John Doe, through undersigned counsel, in response to the November 12, 2019 Minute Entry of this Court (R. Doc. 15), respectfully files this Memorandum in opposition to Defendant, The Administrators of the Tulane Educational Fund's ("Defendant" or "Tulane"), objections to Plaintiff taking depositions of non-party witnesses who are Tulane students and taking in excess of ten depositions.

As more fully set forth below, Plaintiff requests that the Court:

- allow Plaintiff to depose one non-party Tulane student (unless other relevant witnesses are identified once Tulane produces their names from the investigation report);
- allow Plaintiff to depose a total of eleven people; and
- decline to limit the scope of questioning of Jane Roe.

1

## I. BACKGROUND

Plaintiff's suit against Tulane primarily alleges two causes of action: (1) that Tulane breached its contract with him by failing to conduct a fair and reliable gathering of the facts by a trained and impartial investigator who would correctly and impartially apply the preponderance of the evidence standard, and (2) that in its investigation, Tulane reached an erroneous outcome pursuant to Title IX, which was motivated by gender bias. The common thread in his main two legal theories is that Tulane erred in its investigation, and that an unbiased, thorough, and fair investigation **would have reached a different conclusion**. Tulane seeks a ruling from this Court that would prevent Plaintiff from gathering relevant evidence to support his claims, and that would insulate Tulane and the process it undertook—the process of which Plaintiff complains—from any judicial review. Tulane's answer to Plaintiff's claim that it did not conduct a fair and impartial investigation is, apparently, "Yes we did, and you are not only required to take our word for it, but you cannot ask any of the witnesses any questions about the facts because we already spoke to (some of) them and told you what they said." That cannot be.

As this Court knows, "relevant evidence" is broadly defined to include evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. And a discovery request is relevant if it seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence. It is hard to imagine evidence that would be more relevant to Plaintiff's claims that Tulane did not engage in a fair and impartial investigation, and reached an erroneous outcome in its investigation, than testimony from the complainant, Jane Roe, and other students with personal knowledge of the underlying facts that Tulane "investigated." Deposing these witnesses—witnesses whom Plaintiff has never before heard from directly, and

2

whose statements were presented to Plaintiff only through the lens of Tulane's Title IX investigator—would certainly have the tendency to make the existence of whether Tulane conducted a fair and impartial investigation more or less probable.

At this time, Plaintiff seeks to depose only one non-party student witness in addition to the complainant in the underlying investigation.[1]  Plaintiff is unable to identify any other potential witnesses because Tulane redacted the name of **every student witness** from the student disciplinary file it produced to Plaintiff on Friday, November 15,[2] despite there being a Protective Order in place that adequately safeguards the legitimate need for privacy, and despite Plaintiff informing this Court that he needed to know the names of the student witnesses to adequately determine potential deponents and/or witnesses.  Plaintiff, therefore, asks this Court to (1) permit Plaintiff to depose the one non-party witness he has been able to identify, (2) not limit the questioning of the complainant as requested by Tulane, and (3) order Tulane to produce a copy of the student disciplinary file with the names of the student witnesses unredacted so that he can determine if any other student witnesses should be deposed or called to trial in this matter.

## II.   SCOPE OF RELEVANT EVIDENCE AND DISCOVERY

The scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982).  A discovery request is relevant when the request seeks admissible evidence or "is reasonably calculated to lead to the discovery of admissible evidence." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011*); see also Wiwa v. Royal*

---

[1]   Although Plaintiff initially sought to depose two non-party student witnesses, Plaintiff has decided not to depose one previously identified student and will reserve the right to call the student at the preliminary injunction hearing.

[2]   Tulane produced the investigator report pursuant to a Court order requiring Tulane to turn over a "redacted" copy of the report by November 15, 2019.  *See* R. Doc. 14. Plaintiff understood that any redactions would be limited to personal identifiable information, such as social security numbers, *etc*. The decision to redact all student names has had the obvious effect of frustrating Plaintiff's efforts to investigate his case.

*Dutch Petroleum Co.,* 392 F.3d 812, 820 (5th Cir. 2004). And evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. *See* Fed. R. Evid. 401. Plaintiff seeks to depose Jane Roe and one non-party student witness (that he knows about), each of whom possess information directly relevant to Plaintiff's claims that the investigation in the underlying case was fundamentally flawed and biased, in violation of both Title IX and the contract between Tulane and John Doe.

Defendant argues that Plaintiff intends "to re-try the student conduct investigation," which would exceed the scope of discovery. R. Doc. 22 at 1. In support, Defendant points to Plaintiff's allegations in his Complaint and motion for injunctive relief that Jane Roe provided "false and inconsistent statements," and that another witness casts significant doubt on Jane Roe's credibility. Defendant then goes on to make a single point: that John Doe is not permitted to use these proceedings to re-litigate the underlying case. Defendant argues that the proceedings at issue are not "an invitation for courts to second-guess disciplinary decisions of colleges or universities;" R. Doc. 22 at 4; "the law does not allow the Court to retry the University's disciplinary proceeding;" *id.*; "It is **not** a lawsuit between Plaintiff (John Doe) and the non-party Complainant (Jane Roe);" *id.* at 5; "The relevant issue before the Court regarding Plaintiff's Title IX erroneous outcome claim is **not** to make an independent determination (*i.e.,* to retry the student conduct investigation and reconsider the related appeal)." *Id.*

Tulane, however, fails to cite a single case that stands for the proposition that when a student sues a university for breach of contract or under Title IX, and argues that the school did not conduct a fair and impartial investigation and as a result reached an erroneous outcome, that it is irrelevant to show what a fair and impartial investigation would entail. Plaintiff is trying to

4

prove his claims for erroneous outcome under Title IX and breach of contract—and the latitude that the Federal Rules of Civil Procedure and Federal Rules of Evidence provide is broad. Tulane's position would effectively prevent Plaintiff from proving his claims.

A plaintiff bringing a Title IX erroneous outcome challenge must plead two elements: (1) facts sufficient to cast doubt on the accuracy of the proceeding and (2) a causal connection between the flawed outcome and gender bias. *Klocke v. Univ. of Tex.*, 938 F.3d 204, 210 (5th Cir. 2019). As Defendant notes, "[t]o analyze fundamental fairness, the focus is whether Tulane adhered to its misconduct procedures (*i.e.,* whether the proceedings fell within the objective reasonable expectations of one reading the relevant rules)." R. Doc. 22 at 4. Plaintiff does not disagree; he must prove *both* elements, and he seeks to depose Jane Roe and the student witnesses because their testimony is directly relevant to the **accuracy of the proceeding**.

As for Plaintiff's breach of contract claim, Defendant again argues that "the relevant scope of discovery . . . is not what actually occurred during the incident at issue in the student conduct matter, but rather whether Tulane violated the Code of Conduct." Among other things, Tulane's Code promises that the investigation process is "a neutral and fair investigation with no presumption of wrongdoing." Tulane Code of Student Conduct, Sec. VI., Sec. VI.A. The breach of contract claim, like the Title IX claim, alleges that Tulane did not conduct a neutral and fair investigation and it is certainly relevant to Plaintiff's claim what a neutral and fair investigation would have amounted to *and would have discovered*. Deposing the student witnesses who were identified during Tulane's investigation is critical to proving that claim. Tulane interviewed some of these witnesses, and chose not to interview others. It is Tulane's flawed procedure and whether it amounted to a fair and neutral investigation that is at issue. And who Tulane did and did not interview, and what information those witnesses possess, is directly relevant to whether Tulane's

procedure was flawed and whether it breached its promise to Plaintiff to task a trained and impartial investigator with conducting a neutral and fair investigation.

John Doe's pleadings detail the multiple and striking inconsistencies and untruths in Jane Roe's statements—not to prove his innocence, but to support his claim that any reasonably competent, neutral, or fair investigation would not have found Plaintiff responsible for sexual assault. As another example of Tulane's flawed investigation, Doe points to a witness that was not interviewed during the investigation despite Jane Roe having made contemporaneous statements to her regarding the incident—not solely to prove that what Jane Roe told that witness was true, but to prove that what the witness would have said demonstrates that the Investigator unequivocally should have interviewed her—and her failure to do so goes directly to John Doe's claims of erroneous outcome and breach of contract.

John Doe is entitled to explore these failings in Tulane's process, and to detail what a fair and neutral investigation would have uncovered in order to prove his breach of contract claim. Such failings also cast doubt on the accuracy of the outcome, which is essential to prove his Title IX claim.

### A. No Limitations Should be Imposed on the Deposition of Jane Roe

Tulane faces a significant burden to show why Roe's deposition should be limited. To limit the scope of Jane Roe's deposition, it must "show the necessity of [the] issuance [of a protective order], which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Defendant has not met this significant burden for why Jane Roe's deposition should be limited in any way.

6

Defendant wishes to limit questioning of Jane Roe to the three areas of questioning articulated in *Doe v. Lynn,* No: 9:16-CV-80850, 2017 WL 275448 (Jan. 19, 2017): (i) how the defendant went about investigating the events of the alleged incident; (ii) what information defendant ultimately possessed during the investigation; and (iii) how the defendant acted on that information in the disciplinary proceeding against the plaintiff. *Id*. at *6. Defendant cites to *Doe v. Lynn* to support its argument that Jane Roe's questioning should be limited (and that the non-party students should not be deposed at all, as discussed below). Defendant's reliance on *Doe v. Lynn* is misplaced. That case, which is not binding on this Court, does not support either limitation.

The court in *Lynn* limited the questioning of the complainant Mary Roe for two reasons: first, because the plaintiff sought to prove that he was factually innocent of sexual assault through his proposed questions of Mary Roe. The plaintiff stated that a "critical issue in this case" is whether "in truth and in fact" the sexual assault had occurred. *Id*. at *5. The court held that plaintiff's "position misconceives the erroneous outcome challenge." *Id*. Noting that the issue was not whether the plaintiff was factually innocent, the court stated, "Rather, it is whether Plaintiff is 'innocent' in the sense that he was found to have committed that act *following a proceeding that could not support that result*." *Id*. Here, Plaintiff is not attempting to prove his innocence separate and apart from Tulane's flawed investigation; the deposition of Jane Roe is directly relevant to the issue of whether a fair and impartial investigation could possibly have supported the result, which was a finding that John Doe was responsible for sexual assault.

Second, the court limited the scope of questioning because Mary Roe suffered from epilepsy—and a doctor had concluded that extensive deposition questioning would cause her to have a spike in seizures. *Id*. The court, in limiting the scope of questioning, balanced the relevance of her testimony "against the threat to Mary Roe's health." *Id*. at *6. Defendant correctly notes

7

that the court imposed limitations on her deposition "to ensure the maintenance of a balance of the interests and rights of both parties." R. Doc. 22 at 4 n.3. Defendant fails, however, to offer any similar balancing here, regarding Jane Roe's interests and why they would or should outweigh John Doe's. There is no "sound basis or legitimate need" for similar limitations.

Rather than demonstrate good cause for why Jane Roe's deposition should be limited, Defendant simply repeats that "Plaintiff intends to convert the deposition of non-party Jane Roe (for a full day as Plaintiff's counsel has indicated) into an independent second investigation of the student conduct matter at issue." R. Doc. 22 at 9. Once again, Defendant mischaracterizes the relevance of deposing Jane Roe. In John Doe's case, the flawed investigation by Defendant resulted in Plaintiff being found responsible for a sexual assault he did not commit. Plaintiff does not seek a judgment declaring his innocence; rather, he is suing Defendant under Title IX for erroneous outcome and for contract breach, both on the theory that Defendant's investigation was so flawed that John Doe was denied a fair and neutral process. It is the investigation itself that Plaintiff seeks to explore, and no single witness to the process possesses more information about it, and can shed more light on the erroneous credibility findings on which the investigator relied, than Jane Roe. How Jane Roe described the alleged assault and the events before and following, how she interacted with the investigator, and the information she did *and did not* provide, goes *directly* to the issue of whether the investigation was conducted in a fair and neutral manner and whether the investigator's finding was supported by a preponderance of evidence. Freely deposing Jane Roe does not amount to "an independent second investigation;" it is a probe of the highly relevant testimony of the person whose credibility was the entire basis for the investigator's finding in the underlying case. An unfettered deposition of Jane Roe is the only way for Doe to determine

whether Tulane performed a fair, impartial, and complete investigation, and Tulane should not be allowed frustrate that effort by unnecessarily limiting discovery.

As the court in *Lynn* noted, "Mary Roe's account of the process is unique and important. *Without it, Plaintiff would be left to rely largely on accounts given by the party this lawsuit has been brought against*, raising the usual concerns about bias and motive." *Lynn*, 2017 WL 275448 at *8 (emphasis added). That is exactly the situation here. Because Jane Doe's testimony is highly relevant to Plaintiff's claims about the process, and because Defendant has failed to offer any reason that would rise to the level of good cause to limit her deposition, Plaintiff respectfully asks the Court not to limit the questions posed to Jane Roe in any manner.

### B. Depositions of Non-Party Students Should Be Permitted

Next, Tulane seeks to prevent Doe from deposing *any* student non-party witnesses. "Protective orders prohibiting depositions are rarely granted." *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979)). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter*, 593 F.2d at 651. Tulane has not met that heavy burden.

Defendant argues that non-party student witnesses should not be deposed because they do not have "unique, personal knowledge" on Tulane's Sexual Misconduct Climate Survey, pressure from the federal government, and other indicia of gender bias that Plaintiff alleges in his Complaint. Further, they "do not have unique, personal knowledge on Tulane's procedures under the Code and Procedural Protections, and non-party students do not have personal knowledge on the application of the preponderance of the evidence standard." R. Doc. 22 at 13. Plaintiff has never suggested, however, that he would depose the non-party student witnesses about Tulane's

Code of Student Conduct, or governmental pressure, or the legal standard at issue.  For both his Title IX and contract claims, Plaintiff has a threshold burden of proving an unfair process—and these witnesses, who were themselves involved in the investigation, have information directly relevant to that issue.

The court in *Lynn* held that non-party witnesses, including Mary Roe's parents, were permitted to be deposed, because the fact that they were "not parties to the litigation and that their testimony is of minimal relevance" was not good cause to preclude them and did not outweigh the burden of showing good cause to exclude them.  *Lynn*, 2017 WL 275448 at *2.  Defendant has offered no good cause to preclude the non-party student depositions other than its own conclusory statement that Plaintiff intends ask questions "that will include inquiries on topics that are not relevant to, and which will exceed the permitted scope of discovery."  R. Doc. 22 at 14.

Defendant, for example, objects to the deposition of a "newly-identified" student witness because "such a new student witness is not only a non-party to this lawsuit and a non-party to the student conduct investigation, but this new witness also has no relevant personal knowledge regarding the student conduct investigation that was conducted."  Defendant is mistaken twice over.  The eventual testimony at the preliminary injunction hearing of this student (who Plaintiff no longer seeks to depose) would reveal that indeed she does have personal knowledge regarding the student conduct investigation, but was never interviewed by the university.  Furthermore—and again—Plaintiff does not seek to prove the truth of the facts known by this witness standing alone; rather, he seeks to show what a fair and impartial investigation would have revealed to the Investigator, and how those facts would have affected the outcome.  This witness has facts directly relevant to that inquiry.

Tulane objects to these depositions for the additional reasons that the final investigation report is protected from disclosure by FERPA, and that the non-party student witness depositions would be cumulative and duplicative and can be sought from other sources. R. Doc. 22 at 15. As an initial matter, there is a comprehensive Protective Order in place to protect the legitimate privacy needs of all students. More fundamentally, however, Tulane does not have any basis on which to conclude the student testimony would be duplicative or could be sought elsewhere, and has not identified any other source of such highly relevant testimony. Finally, undersigned counsel has attended numerous interviews with students involved in conduct investigations, including the initial interview with Plaintiff in this case, and Tulane, like other schools, regularly shares with students information it learned from other students and which is contained in its investigation reports it claims to be protected from disclosure by FERPA. This is because such information is not protected under FERPA. Indeed, information that an official obtained through personal knowledge or observation, or has heard orally from others, is not protected under FERPA. *See* FERPA General Guidance for Students, available at https://www2.ed.gov/policy/gen/guid/fpco/ferpa/students.html.

For the very same reason the court in *Lynn* allowed the depositions of Mary Roe's parents, it should allow the depositions of the non-party student witnesses. Defendant has not established the "heavy burden" of good cause to preclude them; it has pointed to no reason other than its own speculation that the students possess no relevant information.

### III.     PLAINTIFF SHOULD BE PERMITTED TO EXCEED TEN DEPOSITIONS

Finally, Tulane seeks to limit Plaintiff to ten depositions. "By order, the court may alter the limits in these rules on the number of depositions." Fed. R. Civ. P. 26(b)(2)(A). As this Court has noted, it must "weigh the factors in Rule 26(b)(2) to determine whether [the party seeking leave]

should be permitted more than ten (10) depositions." *Diaz v. Superior Energy Servs., LLC*, No. 07-2805, 2008 WL 11353753, at *1 (E.D. La. Feb. 20, 2008) (Wilkinson, J.). The relevant inquiry is whether: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

When the party seeking leave to conduct more than ten depositions demonstrates that the witnesses' testimony is properly within the scope of discovery, courts in this district routinely grant leave to conduct the additional depositions. *See, e.g.*, *Administrators of the Tulane Educ. Fund, et al. v. Biomeasure, Inc., et al.*, No. 08-5096-SSV-SS, 2012 WL 12990526, at *2 (E.D. La. Jan. 3, 2012) (where plaintiff Tulane "failed to obtain leave of court for taking more than ten depositions," holding that "[t]he ten deposition limit . . . will not be enforced to deny plaintiffs the depositions of [two additional witnesses]"); *Quest Diagnostics Inc. v. Factory Mut. Ins. Co.*, No. 07-03877, 2008 WL 11355072, at *4-6 (E.D. La. Aug. 21, 2008) (granting leave to depose four additional witnesses because the witnesses "may have additional information . . . that may be relevant in this matter" and "may provide a unique perspective and information"); *Verizon Bus. Global, LLC v. Wayne Hagan & James Joubert*, No. 07-0415, 2008 WL 11363380, at *2-4 (E.D. La. Dec. 4, 2008) (granting leave to take depositions of additional witnesses who "may, in fact, have direct knowledge" relevant to the case); *United States v. RES Holdings*, No. 11-739, 2012 WL 4369658, at *2-3 (E.D. La. Sept. 24, 2012) (granting the plaintiff's motion to take a total of twenty depositions).

Tulane has offered nothing more than a conclusory assertion that the student depositions will be cumulative because Plaintiff intends to depose nine other people. R. Doc. 22 at 16. As discussed above, however, Tulane is wrong about what kind of information Plaintiff seeks from these witnesses, and thus cannot opine on whether the information they possess is duplicative, or whether it is otherwise available to Plaintiff. These witnesses will "provide a unique perspective and information" on topics that are relevant to Plaintiff's claims. Further, Plaintiff seeks to depose only one witness in excess of the rule, and, as previously explained to the Court, four of the proposed depositions will be brief and conducted over a single day. On the one hand, the burden on all involved of conducting the eleventh deposition will be minimal, while, on the other hand, allowing the deposition will permit the Plaintiff to conduct a full investigation into a matter that may have substantial, and irreversible, effects on Plaintiff. Plaintiff requests that he be allowed to take eleven depositions.

## IV.  CONCLUSION

Plaintiff respectfully requests that this Court overrule Defendant's objections regarding deposition testimony in total and allow Plaintiff to exceed ten depositions, allow depositions of non-party student witnesses, and allow unrestricted questioning of Jane Roe. Finally, Plaintiff also respectfully requests that the Court order Tulane to produce a copy of the student disciplinary file

with the names of the student witnesses so that he can determine if any other student witnesses should be deposed or called to trial in this matter.

November 18, 2019

                                          Respectfully Submitted,

                                          /s/ *Ellie T. Schilling*
Ellie T. Schilling, 33358
Ian L. Atkinson, 31605
Schonekas, Evans, McGoey
& McEachin, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
ellie@semmlaw.com
ian@semmlaw.com

                       -and-

/s/ *Samuel A. Josephs*
Samuel A. Josephs, (*pro hac vice*)
Lindsey M. Hay, (*pro hac vice*)
Spertus, Landes & Umhofer, LLP
617 W. 7th Street, Suite 200
Los Angeles, CA 90017
Telephone: (213) 205-6520
Facsimile: (213) 826-4711
sjosephs@spertuslaw.com
lhay@spertuslaw.com

*Attorneys for John Doe*