## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN DOE, | * **ACTION NO.: 2:19-CV-13425-** |
| | * **WBV-JCW** |
| Plaintiff | * |
| | * **SECTION: "D" DISTRICT** |
| v. | * **JUDGE VITTER** |
| | * |
| THE ADMINISTRATORS OF THE TULANE | * **MAGISTRATE: JUDGE** |
| EDUCATIONAL FUND, | * **WILKINSON** |
| | * |
| Defendants | * |
| | * |
| *   *   *   *   *   *   *   * | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S DISCOVERY ORDER

Plaintiff John Doe, through undersigned counsel, respectfully files this Memorandum in opposition to Defendant, The Administrators of the Tulane Educational Fund's ("Defendant" or "Tulane") Appeal of Magistrate Judge Wilkinson's Ruling issued November 22, 2019. (Rec. Doc. 25). A full two weeks after Magistrate Judge Wilkinson's order issued, and on the eve of the deposition at issue, Tulane filed an appeal that raises issues and arguments it never presented to Magistrate Judge Wilkinson. Judge Wilkinson issued a thorough and well-reasoned opinion denying Defendant's motion in full and Defendant's request for this Court to reverse that Order wholly fails to meet the clear error standard – a requirement for this Court to reverse Judge Wilkinson's ruling. Defendant has not met its burden to disturb Judge Wilkinson's well-reasoned ruling regarding the deposition of Jane Roe. Plaintiff therefore respectfully requests that Judge Wilkinson's ruling be affirmed.

## I.      BACKGROUND

On November 14, 2019, Defendant filed objections to Plaintiff's proposed depositions, including objecting to the scope of Jane Roe's deposition, the depositions of non-party student witnesses, and Plaintiff's request to take eleven, rather than ten, depositions. (Rec. Doc. 22.) Specifically, Defendant sought to limit Jane Roe's deposition to three areas of questioning:

(i) How the defendant went about investigating the events of the alleged incident;

(ii) What information defendant ultimately possessed during the investigation; and

(iii) How the defendant acted on that information in the disciplinary proceeding against the plaintiff.  (Rec. Doc. 22 at 7.)

Plaintiff opposed those objections (Rec. Doc. 24), and on November 22, 2019, Magistrate Judge Wilkinson denied Defendant's requests in full—allowing Plaintiff to freely depose Jane Roe, to depose non-party student witnesses, and to take eleven depositions. (Rec. Doc. 25 at 8.) Without establishing any clear error on the part of the Magistrate Judge, Tulane now reiterates its original objections relying on the same case law Magistrate Judge Wilkinson found unpersuasive, and adds objections it never presented to Judge Wilkinson in the first instance.

The Magistrate Judge based his Order on two fundamental principles: (1) "applying the [non-binding and unpersuasive] Florida decision [on which Tulane relied] to the circumstances presented by the instant case would shrink permissible discovery to a level far below what is permitted by Rule 26(b)(1) and contemplated by a recent decision of the Fifth Circuit describing the essential elements of plaintiff's claims as to which plaintiff has the burden of proof"; and (2) "adopting the pre-deposition screening approach undertaken by the Florida court, even in the less comprehensive way proposed by defendant, would undermine both the fundamental purpose of discovery and the structure of Fed. R. Civ. P. 30(c)(2), which governs the manner in which depositions are to be conducted."  (Rec. No. 25 at 6, 8.)

Tulane's proposed limitations on the deposition of Jane Roe would hamstring Plaintiff from discovering information directly relevant to his central claims: that Defendant conducted an investigation that significantly departed from the fair and neutral process guaranteed by both Title IX and Tulane's own Code, and that a fair and neutral investigation would have reached a different outcome.  As this Court knows, "relevant evidence" is broadly defined to include evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401.  And a discovery request is relevant if it seeks admissible evidence or is reasonably calculated

to lead to the discovery of admissible evidence.  Judge Wilkinson's Order was not clearly erroneous in recognizing that Defendant's proposed limitations on the deposition of Jane Roe would eviscerate these definitions.

Plaintiff's suit against Tulane  primarily alleges two causes of action: (1) that Tulane breached its contract with Plaintiff by failing to conduct a fair and reliable gathering of the facts by a trained and impartial investigator who would correctly and impartially apply the preponderance of the evidence standard; and (2) that in its investigation, Tulane reached an erroneous outcome pursuant to Title IX, which was motivated by gender bias.  The common thread in Plaintiff's main two legal theories is that Tulane erred in its investigation, and that an unbiased, thorough, and fair investigation **would have reached a different conclusion**.

It is hard to imagine evidence that would be more relevant to Plaintiff's claims that Tulane did not engage in a fair and impartial investigation, and reached an erroneous outcome in its investigation, than testimony from the complainant, Jane Roe, about her personal knowledge of the underlying facts that Tulane "investigated."  Deposing Jane Roe, whose statements were presented to Plaintiff **only** through the lens of Tulane's Title IX investigator, would certainly have the tendency to make the existence of whether Tulane conducted a fair and impartial investigation more or less probable.

Defendant now seeks to disturb Judge Wilkson's ruling and sustain its objections regarding limiting Jane Roe's deposition.  Further, it raises objections and arguments it never raised with Judge Wilkinson.  Despite these procedural deficiencies, however, Defendant again fails to sustain its heavy burden under Fifth Circuit case law of showing good cause to support the issuance of a protective order.  Judge Wilkinson's Order should be upheld.

## II.   <u>STANDARD OF REVIEW</u>

A Magistrate Judge's ruling will be disturbed only when the ruling is "clearly erroneous or is contrary to law." *See* Fed. R. Civ. P. 72(a); *see also Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995).  A finding is "clearly erroneous" when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Stevens*, 487 F.3d 232, 240

(5th Cir. 2008) (quoting *United States. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  No such clearly erroneous mistake has been committed here.  Defendant's appeal is simply a retread of case law that Magistrate Judge Wilkinson found inapplicable or unpersuasive, and Defendant points to nothing in his ruling that is "clearly erroneous or contrary to case law."

### III.   DEFENDANT'S APPEAL IS PROCEDURALLY IMPROPER

As an initial matter, Defendant raises issues in its appeal that were never raised in its objections or arguments to Judge Wilkinson and thus never addressed in Magistrate Judge Wilkinson's Order.  For instance, Defendant begins its appeal by seeking to exclude from Jane Roe's deposition any questioning related to "[n]on-party Jane Roe's sexual history."  (Rec. Doc. 32-1 at 2.)  This request is a blatant attempt to mislead the Court about Plaintiff's intentions; Plaintiff has **never** expressed an intention to question Jane Roe about her sexual history, nor does Defendant point to anything, anywhere in its appeal, that would suggest Plaintiff or his counsel has done so.  More importantly, this limitation was never raised in Defendant's objections or in its briefing to Magistrate Judge Wilkinson.  Defendant has therefore waived any such objection and it is not properly the subject of an appeal to this Court.  *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994) (collecting cases holding that under the federal Magistrate Judge Act the parties are not permitted "to raise at the district court stage new evidence, argument, and issues that were not presented to the Magistrate Judge—'absent compelling reasons'").

Similarly, Defendant now raises an objection to Plaintiff questioning Jane Roe about complaints that were filed against her by John Doe.  (*Id*.)  Defendant did not raise this issue in its objections or arguments to Magistrate Judge Wilkinson, and thus the Magistrate Judge did not address it in his order.  This too is waived.  Defendant's attempt to package these new objections as an "appeal" is improper and should be raised, if at all, with Magistrate Judge Wilkinson in the first instance.

### IV.   DEFENDANT FAILS TO MEET THE CLEAR ERROR STANDARD

Aside from the fact that Tulane has waived its arguments it now raises with this Court, Judge Wilkinson's discovery rulings may be disturbed only upon a finding of clear error.

4

Defendant has failed to meet that heavy burden.  The scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1); *see Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir.1982).  Magistrate Judge Wilkinson ruled that "defendant's request to restrict and/or prohibit the deposition testimony in this case, particularly of the complainant . . . would preclude discovery of facts" necessary to prove Plaintiff's claims.  (Rec. Doc. 25 at 8.)  Indeed, a plaintiff bringing a Title IX erroneous outcome challenge must plead two elements: (1) facts sufficient to cast doubt on the accuracy of the proceeding and (2) a causal connection between the flawed outcome and gender bias.  *Klocke v. Univ. of Tex.*, 938 F.3d 204, 210 (5th Cir. 2019).  Plaintiff must prove *both* elements, and he seeks to depose Jane Roe about her recollection of the underlying facts as well as the investigation and appeal because her testimony about these things is directly relevant to the accuracy of the proceeding—the proceeding being Tulane's own investigation.

Plaintiff's breach of contract claim, like his Title IX claim, alleges that Tulane did not conduct a neutral and fair investigation.  Among other things, Tulane's Code promises a fair and reliable gathering of the facts by a trained and impartial investigator who would correctly and impartially apply the preponderance of the evidence standard.  Tulane Code of Student Conduct, Sec. VI., Sec. VI.A.  It is Tulane's flawed procedure and whether it amounted to a fair and neutral investigation that is at issue in this case.

Defendant boldly requests that Jane Roe not be questioned about "her recollection of the alleged sexual assault on February 14, 2019 or related events before or after this incident"; about the "veracity of any statements" by other individuals regarding the alleged sexual assault; or about the complaints submitted by John Doe against Jane Roe because they are "separate non-Title IX conduct matters."  *Id*.  Defendant characterizes such topic areas as "after-the-fact cross-examination of non-party Jane Roe that exceeds the permitted scope of the completed Tulane investigation and appeal . . . at issue in this lawsuit."  *Id*.  To the contrary, each of these areas of questioning falls squarely within the score of permissible discovery.  John Doe's pleadings detail the multiple and striking inconsistencies and untruths in Jane Roe's statements—not to prove his

innocence or re-litigate the underlying case, but to prove what any reasonably competent, neutral, or fair investigation **would have amounted to and discovered**.  Specifically, Doe points to inconsistencies about Jane Roe's self-reported level of intoxication; her changing accounts of the type of sexual contact to which she did and did not consent; her inconsistent accounts of what she remembered and when she remembered it; and her demonstrable untruths regarding her prior relationship with John Doe.  Questions relating to these and other underlying facts will lead to evidence directly related to John Doe's claims about the investigation; indeed, exploring these problematic aspects of Jane Roe's part in the investigation is necessary to show how utterly incompetent and biased that investigation was.

Defendant also objects (for the first time) to Plaintiff's questioning related to the complaints John Doe filed against Jane Roe because, according to Defendant's new objection, they are "separate non-Title IX conduct matters."  (Rec. Doc. 32-1 at 2.)  Tulane's response to the complaints John Doe filed against Jane Roe for harassment and violation of the no-contact order, during the pendency of the investigation, go directly to the second prong necessary in a Title IX erroneous outcome challenge: that gender bias was a motivating factor in the flawed investigation because Tulane failed to investigate complaints by Doe but not complaints by Roe. That the complaints themselves are non-Title IX matters is irrelevant; John Doe alleges that Tulane's response, or lack thereof, to his complaints is evidence of the pervasive gender bias that informs how Tulane handles student complaints in the Title IX context and how it viewed him, in contrast to how it viewed Jane Roe, during the proceedings. John Doe is entitled to discover what Jane Roe knows about those complaints and Tulane's response to them.

Each area of questioning that Defendant seeks to limit by way of this appeal is directly relevant to John Doe's claims, and thus properly within the scope of discovery.  Tulane reiterates its central argument from its objections, which is unsupported by any caselaw, that Plaintiff is attempting to retry "the underlying case" with this lawsuit and that doing so is impermissible. Magistrate Judge Wilkinson's finding that John Doe is entitled to explore the facts he seeks in discovery in order to prove his claims does not constitute clear error, and Defendant fails to

establish that it does.  The scope of discovery allows for "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  As Magistrate Judge Wilkinson expressly found, "Defendant's concern that permitting these depositions without the restrictions it seeks will impermissibly 'retry the University's disciplinary proceeding' is misplaced in the discovery context.  Discovery depositions are neither trial nor preliminary injunction hearing."  (Rec. Doc. 25 at 9.)  As such, Defendant's proposed restrictions "would undermine the fundamental purpose of discovery."  (Rec. Doc. 25 at 8.)   Such a finding is consistent with the Federal Rules and is within the Magistrate Judge's discretion; there is no error, clear or otherwise, here.

## V.      THE CASE LAW CITED BY DEFENDANT DOES NOT SUPPORT LIMITING THE SCOPE OF JANE ROE'S DEPOSITION

The Magistrate Judge properly ruled that Defendant's proposed restrictions would "undermine . . . the fundamental purpose of discovery," and that such restrictions are inappropriate in the discovery context.  (Rec. Doc. 25 at 8-9.)  As it did in its initial objection, Defendant argues that "allegations in Plaintiff's pleadings show a potential intent by Plaintiff to submit deposition inquiries to non-party Jane Roe outside of the relevant scope of discovery."  (Rec. Doc. 32-1 at 13.)  Because Plaintiff alleges in his complaint that central issues in the case relate to Jane Roe's credibility and the inconsistencies and demonstrable untruths that were accepted by the Tulane investigator, Defendant believes that Plaintiff attempts by way of this suit to re-litigate the underlying case; as such, according to Defendant, questioning about the underlying facts would exceed the relevant scope of discovery for Title IX erroneous outcome and breach of contract claims.

Defendant once again erroneously relies on case law that establishes that Title IX cases come to court in a limited posture, and courts should not second-guess the disciplinary decisions of universities.  Again, Defendant points out that "the Fifth Circuit has also expressly recognized that '[i]t is not the role of the federal courts to set aside decisions of school administrators which

the court may view as lacking in wisdom or compassion.'" (*Id*. at 8, citing *Plummer v. Univ. of Houston,* 860 F.3d 767, 777 (5th Cir. 2017)); *see also Ruff v. Bd. of Regents of the Univ. of N.M.,* 272 F.Supp.3d 1289, at *23 (D. N.M. 2017); *Klocke v. Univ. of Tex.,* 938 F.3d 204, 210 (5th Cir. 2019); *Pierre v. Univ. of Dayton,* 143 F.Supp.3d 703, 712-13 (S.D. Ohio 2015).) Plaintiff has never disputed that contention. As detailed above, Plaintiff's burden of proof requires him to establish an erroneous outcome and a breach of Tulane's contract with Plaintiff through its woefully inadequate process, and the facts he seeks from his deposition of Jane Roe speak directly to that point.

The Magistrate Judge's order states that Defendant's proposed limitations would conflict with the recent decision in *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204 (5th Cir. 2019). As an example of facts that would give rise to articulable doubt on the accuracy of the outcome of the disciplinary proceeding, the court in that case pointed to "a motive to lie on the part of a complainant or witness." *Id*. at 210. Magistrate Judge Wilkinson found that Tulane's proposed restrictions would, among other things, "preclude discovery of facts, if any exist, necessary to prove a motive to lie on the part of complainant . . . a complainant's motive to lie as a particular strength of the disciplined student's case is relevant." (Rec. Doc. 25 at 8.) Tulane argues that its proposed limitations do not conflict with *Klocke*, but rather are consistent with "the limited role of federal courts in addressing such claims under this framework." (Rec. Doc. 32-1 at 9.) Tulane's argument is unavailing; its proposed restrictions would expressly preclude discovery of the very facts in *Klocke* that the Magistrate Judge found relevant to John Doe's case—such as a motive for Jane Roe to have lied about her allegations. (*Id*.)

Defendant also leans heavily on an out-of-circuit, unpublished, district court opinion, *Doe v. Lynn*, as it did in its initial brief, to support its argument that Jane Roe's questioning should be limited. *See Doe v. Lynn Univ., Inc*., 2017 WL 275448 (S.D. Fla. Jan. 19, 2017). Magistrate Judge Wilkinson found that the court's decision in that case "unduly truncates permissible discovery;" more notably, it does not even support Tulane's proposed limitations because it is wholly distinguishable. Defendant argues that *Lynn* includes "similar claims (Title IX), similar parties

(John Doe, an accused student, versus a university), and a similar discovery request to the Magistrate regarding the relevant scope of depositions to be conducted by John Doe of a non-party Mary Roe (the complainant)" and in that case, the court curtailed the scope of questioning of the complainant.  (Rec. Doc. 32-1 at 10.)  Defendant once again grounds its argument in the *Lynn* court's finding that "it is necessary to clarify what this case is about, and what it is not," and holding that a Title IX erroneous outcome claim is **not** about factual innocence.  *Id.*  Defendant relies yet again on its assertion that Plaintiff intends, impermissibly, to prove his innocence through this suit, and therefore questioning Jane Roe about the underlying facts exceeds the scope of proper discovery in the Title IX context.  (*Id*. at 11.)

The plaintiff in *Lynn*, unlike Plaintiff, did seek to prove that he was factually innocent of sexual assault through his proposed questions of Mary Roe, stating that a "critical issue in this case" is whether "in truth and in fact" the sexual assault had occurred.[1]  *Lynn*, 2017 WL 275448 at *5.  Noting that the issue was not whether the plaintiff was factually innocent, the court stated, "Rather, it is whether Plaintiff is 'innocent' in the sense that he was found to have committed that act **following a proceeding that could not support that result**." *Id*. (emphasis added).  Here, Plaintiff is not attempting to prove his innocence separate and apart from Tulane's flawed investigation; the deposition of Jane Roe is directly relevant to the issue of whether a fair and impartial investigation could possibly have supported the result Tulane came to.

In Plaintiff's case, the flawed investigation by Defendant resulted in Plaintiff being found responsible for a sexual assault he did not commit.  That he did not commit it, though, is not what he seeks to prove; rather, he is suing Defendant under Title IX for erroneous outcome and for breach of contract, both on the theory that Defendant's investigation was so flawed that John Doe

---

[1] The *Lynn* court also limited the scope of questioning because Mary Roe suffered from epilepsy and a doctor had concluded that extensive deposition questioning would cause her to have a spike in seizures—a fact critical to the court's analysis that Defendant neglects to mention. The court, in limiting the scope of questioning, balanced the relevance of her testimony "against the threat to Mary Roe's health." *Lynn*, 2017 WL 275448 at *6.  Defendant, on the other hand, has offered no cause or balancing factors that would militate in favor of limiting the scope of questioning here.

was denied a fair and neutral process.  It is the investigation itself that Plaintiff seeks to explore, and no single witness to the process possesses more information about it, and can shed more light on the erroneous credibility findings, the assumptions, and the illogical conclusions on which the investigator relied, than Jane Roe.  How Jane Roe described the alleged assault and the events before and following, how she interacted with the investigator, and the information she did and did not provide, goes **directly** to the issue of whether the investigation was conducted in a fair and neutral manner and whether the investigator's finding was supported by a preponderance of evidence.  Freely deposing Jane Roe does not amount to a second investigation; it is a probe of the highly relevant testimony of the person whose credibility was the entire basis for the investigator's finding in the underlying case.   An unfettered deposition of Jane Roe is the only way for Doe to determine whether Tulane performed a fair, impartial, and complete investigation, and Tulane should not be allowed to frustrate that effort by unnecessarily limiting discovery.

Plaintiff does not intend to re-litigate the underlying case; instead, he seeks to prove that no competent, fair investigation could have resulted in the outcome that occurred here.  Defendant's retread of case law that does not advance its position and its repeated assertions that Plaintiff is attempting to re-litigate the underlying case through his deposition questioning of Jane Roe are simply red herrings meant to limit Plaintiff from discovering critical and necessary information for his claims of erroneous outcome under Title IX and breach of contract.

## VI.   CONCLUSION

Because Jane Roe's testimony is highly relevant to Plaintiff's claims about the process, and because Defendant has failed to identify anything clearly erroneous or contrary to law by the Magistrate Judge, Plaintiff respectfully asks the Court not to disturb Judge Wilkinson's ruling.

December 12, 2019

Respectfully Submitted,

/s/ *Ellie T. Schilling*
Ellie T. Schilling, 33358
Ian L. Atkinson, 31605
Schonekas, Evans, McGoey
& McEachin, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
ellie@semmlaw.com
ian@semmlaw.com

-and-

/s/ *Samuel A. Josephs*
Samuel A. Josephs, (*pro hac vice*)
Lindsey M. Hay, (*pro hac vice*)
Spertus, Landes & Umhofer, LLP
617 W. 7th Street, Suite 200
Los Angeles, CA 90017
Telephone: (213) 205-6520
Facsimile: (213) 826-4711
sjosephs@spertuslaw.com
lhay@spertuslaw.com

Attorneys for John Doe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by Email this 12th day of December, 2019.

/s/ *Ellie T. Schilling*
Ellie T. Schilling