UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JOHN DOE                                      CIVIL ACTION NO. 19-13425

VERSUS                                        SECTION "D"
                                              DISTRICT JUDGE VITTER
THE ADMINISTRATORS OF THE
TULANE EDUCATIONAL FUND                       MAG. DIV. (2)
                                              MAG. JUDGE WILKINSON

MEMORANDUM IN SUPPORT OF DEFENDANT'S
RE-URGED MOTION TO COMPEL DISCOVERY

MAY IT PLEASE THE COURT:

Defendant, The Administrators of the Tulane Educational Fund, ("Tulane" or "Defendant"), submits this Memorandum in Support of Defendant's Re-Urged Motion to Compel Discovery to compel Plaintiff, John Doe ("Plaintiff" or "Doe"), to produce unredacted text messages, communications with non-party students on Plaintiff's privilege log, and responsive documents in native form in further supplemental response to Defendant's First Request for Production of Documents to Plaintiff in the above-captioned matter.

I.      RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed a Complaint for Damages and Injunctive Relief on November 5, 2019. (Rec. Doc. 1). On this same date, Plaintiff also filed an Application for Temporary Restraining Order and Motion for Preliminary Injunction. (Rec. Doc. 2). A hearing on Plaintiff's Motion for Preliminary Injunction has been set for January 8, 2020. (Rec. Doc. 14).

Pursuant to the Joint Discovery Plan entered by the Court on November 14, 2019 (*see* Rec. Doc. 19), the parties agreed to schedule depositions between December 3–20, 2019, and in accordance with this discovery plan, depositions began on December 12th and are ongoing as of the date of this motion. (Rec. Doc. 17, at p. 2). Importantly, with regard to this re-urged motion

1

PD.27627493.1

to compel, Defendant is currently scheduled to take the deposition of Plaintiff on December 22nd.

Moreover, the deadline for completion of all discovery for purposes of the preliminary injunction

hearing is December 27, 2019, unless extended by the Court. (Rec. Doc. 17, at p. 3).

## II.        RELEVANT DISCOVERY BACKGROUND

On November 13, 2019, Defendant propounded, in part, Defendant's First Request for

Production of Documents on Plaintiff (hereinafter, the "Discovery Requests").  On November

25, 2019, Plaintiff submitted written responses and objections and produced approximately 18

pages of documents in response to Defendant's Discovery Requests.  Defendant objected to

Plaintiff's written responses and objections and the parties held a discovery meet and confer

conference on December 2, 2019.   During the discovery conference, in response to Defendant's

objections, Plaintiff's counsel agreed to supplement Plaintiff's responses to Defendant's

Discovery Requests on Friday, December 6th.

However, due to the expedited discovery schedule in this case, motions to compel set

forth in the Joint Discovery Order were due on December 3rd.  Since Plaintiff's supplemental

responses and production would not be produced until December 6th, Defendant had no way of

knowing on the Motion to Compel deadline of December 3rd whether its objections would be

satisfied so in an abundance of caution, Defendant filed a Motion to Compel to address the

outstanding discovery issues raised by Defendant to Plaintiff that remained preliminarily

unresolved as of the December 3rd Motion to Compel deadline.

On December 6th, Plaintiff produced supplemental written responses, a supplemental

document production of approximately 613 pages, and a Privilege Log in further response to

Defendant's Discovery Requests.  (*See* Plaintiff's Supplemental Responses to Defendant's First

Request for Production of Documents, attached as Exhibit E; *see also* Plaintiff's Privilege Log,

2

as Exhibit A).[1]  After reviewing the **613 pages** of Plaintiff's supplemental production documents produced on December 6th (contrasted with the **18 pages** originally produced by Plaintiff on November 25th), Defendant noted the production of two redacted text message streams between Plaintiff and a non-party student (N.S.) and Plaintiff's mother. (*See* DOE-000549-000555, to be submitted by Plaintiff's counsel to the Court for *in camera* review).[2]  Defendant further noted that Plaintiff's Privilege Log consists of e-mail communications and attachments between Plaintiff's counsel and non-party students that occurred <u>during</u> Tulane's investigation of the student conduct matter at issue in this lawsuit and <u>before</u> the filing of the instant lawsuit.  These non-party students have now been listed by Plaintiff on his Preliminary Witness List that was exchanged with Defendant on December 6th.

In an effort to determine if Plaintiff's counsel is also representing the non-party students listed on Plaintiff's Privilege Log, undersigned counsel sent an email to Plaintiff's counsel on December 11th, requesting confirmation and clarification as to whether or not these non-party students are represented by counsel for Plaintiff.  (*See* Exhibit B).  Plaintiff's counsel responded and confirmed that they are <u>not</u> representing any of the non-party students listed on Plaintiff's Privilege Log.  (*See* Exhibit B).

Upon receipt of confirmation from Plaintiff's counsel that they do not represent any of the Plaintiff's student witnesses listed in the entries on Plaintiff's Privilege Log, Defendant then

---

[1]  Out of caution for the privacy interests of non-parties to this lawsuit, Defendant has attached a redacted copy of Plaintiff's Privilege Log as Exhibit A, and will refer to the non-party students listed on the log by their initials. Accordingly, Defendant respectfully notes that an unredacted version of Plaintiff's Privilege Log is to be produced by Plaintiff's counsel for the Court's *in camera* review.

[2]  Defendant further respectfully notes that the text messages at issue – DOE000543-000555 – have been produced by Plaintiff to Defendant as Confidential, subject to the protective order between the parties. Accordingly, Defendant has not attached the text messages to the instant motion to compel and will refer to the text messages by the relevant bates numbers on each document in its motion to compel.  Defendant respectfully notes that an unredacted version of these text messages are to be produced by Plaintiff's counsel for the Court's *in camera* review.

3

requested that Plaintiff produce all e-mail communications, and related attachments, with the non-party students listed on Plaintiff's Privilege Log, as well as unredacted copies of the redacted text messages between Plaintiff and non-party student N.S. and Plaintiff's mother. (*See* Exhibit C).   On December 12th, Defendant further requested that Plaintiff reproduce its supplemental document production in native format, as was requested in Defendant's written document requests, and as further requested of Defendant by Plaintiff's counsel. (*See* Exhibit D). Defendant complied with Plaintiff's request and provided its production in native format on December 6th, and has requested that Plaintiff supplement its document production to do the same in accordance with Defendant's original Discovery Request instructions.

On December 13th, the parties held a second discovery meet and confer conference to discuss the issues herein related to the production of unredacted text messages between Plaintiff and non-party student N.S. and Plaintiff's mother, and all e-mail communications on Plaintiff's Privilege Log regarding non-party students.   During the discovery conference, Plaintiff's counsel stated that the text messages at issue (*see* DOE-000543-000555, to be submitted by Plaintiff for *in camera* review) contained "non-responsive family stuff that has nothing to do with the case." As Defendant is unable to confirm the relevance of the redacted portions of the text messages, Defendant maintains an objection at this time. Plaintiff agreed during the discovery conference to submit these redacted text messages to the Court in unredacted form for the Court to conduct an *in camera* inspection and determine if they are, in fact, not relevant to this lawsuit as Plaintiff claims. (*See* Exhibit F).

Likewise, Plaintiff's counsel also agreed to submit to the Court for an *in camera* inspection all documents listed on Plaintiff's Privilege Log. (Exhibit A).  As noted on Plaintiff's Privilege Log, these communications are between Plaintiff's counsel and non-party students that

4

occurred during Tulane's investigation of the student conduct matter at issue in this lawsuit and/or occurred before the filing of the instant lawsuit. Further, as of December 6th, Plaintiff listed these non-party students on his Preliminary Witness List. All but one of these non-party students was requested to provide a statement to Tulane during the student conduct investigation of Plaintiff. Moreover, Plaintiff's counsel has confirmed that they do not represent any of the non-party students listed on Plaintiff's Privilege Log.

Defendant also respectfully advises the Court that it has issued Subpoenas Duces Tecum to the three non-party students listed on Plaintiff's Privilege Log, as well as two additional non-party students, all five of whom are listed on Plaintiff's December 6th Preliminary Witness List. During the discovery conference on December 13th, Plaintiff's counsel indicated he would be filing objections to these Subpoenas Duces Tecum related to the potential production by these non-party students of the same communications that are listed on Plaintiff's Privilege Log.

Defendant submits that this Re-Urged Motion is submitted in good faith and expressly submits that this motion is not submitted for dilatory or harassing purposes. Defendant respectfully requests that the Court conduct an *in camera* review of the limited documents and text messages at issue at this time, in accordance with the objections raised by Defendant herein.

## III.   STANDARD OF REVIEW

Federal Rules of Civil Procedure Rule 37 governs motions to compel discovery responses. FED. R. CIV. P. 37(a)(3)(A). Pursuant to Rule 37, "if a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." FED. R. CIV. P. 37(a)(2). Moreover, Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Finally, Rule 37 also permits an award of expenses "against

5

a party whose conduct necessitated a motion to compel discovery." *Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981).

## IV. DEFENDANT'S RE-URGED NON-RESPONSIVE OR DEFICIENT ANSWERS TO DEFENDANT'S FIRST REQUESTS FOR PRODUCTION NO. 4, 10, 16

### A. Redacted Text Messages

Defendant's RFP Requests No. 4, 10 and 16 collectively seek documents and communications, including text messages and social media postings, related to the student conduct investigation that is the subject matter of this lawsuit and/or the allegations in Plaintiff's Complaint. (*See* Exhibit E, at pp. 3, 5, 7). In supplemental response to Defendant's Discovery Requests on December 6th, Plaintiff responded, in part: "Further answering, the iMessage entries that have been redacted from the text chains contain communications that are not responsive to this Request." (*See* Exhibit E, at pp. 4, 5). The text message streams produced by Plaintiff on December 6th, in redacted form, are DOE-000543-000549 (a text message stream between Plaintiff and his mother) and DOE-000550-000555 (a text message stream between Plaintiff and a non-party student). Notwithstanding the explanation by Plaintiff's counsel, Defendant respectfully notes that its is unable to view the redacted portions of these text message streams at this time to confirm whether such communications are in fact non-responsive. Thus, Defendant is constrained to respectfully seek *in camera* review by the Court on this issue.

Additionally, Defendant notes that Plaintiff's privilege log does not contain any reference to these text message streams; thus, there is no indication that the redactions were made on the basis of a privilege. Moreover, Plaintiff's counsel has confirmed that it does not represent non-party students, and Plaintiff's mother is also not a party to this lawsuit. To the extent the redactions are made on the basis of confidentiality, Defendant further notes that a protective order is in place between the parties to govern the exchange of confidential information in this

6

case and to protect against unauthorized disclosure of such information. (*See* Rec. Doc. 23).

Finally, Defendant submits that Plaintiff has produced these text message streams as responsive and relevant to Defendant's RFP Requests No. 4, 10 and 16.  The redactions occur within the context of these responsive communications, and in fact, in some instances occur in the middle of a responsive text message stream. (*See, e.g.,* DOE-000550-000551, DOE-000552, DOE-000543-000546, DOE-000549).  Consequently, the redacted portions appear responsive due to the context in which they occur in the text messages that have been produced by Plaintiff, and to the extent the redacted content is not responsive, Defendant reiterates that a protective order is in place to protect confidential information exchanged between the parties in this case. Accordingly, Defendant respectfully requests *in camera* review of the redacted text messages, and further requests that after such review that Plaintiff be ordered to promptly produce <u>unredacted</u> copies of DOE-000543-000555 to Defendant in supplemental response to Defendant's Discovery Requests.

### B.    Plaintiff's Privilege Log

Initially, it is important to note the following relevant dates regarding Tulane's investigation of the student conduct matter at issue in this lawsuit (No. 2018313802) and the instant lawsuit:

- March 20, 2019 – Non-party complainant advised Tulane of her request to proceed with a student conduct investigation against John Doe for an alleged incident on February 14, 2019.

- March 26, 2019 – Tulane's Director of Student Conduct completed a procedural review with John Doe and his advisor via telephone.

- April 1, 2019 – Tulane sent a notice of investigation and charges to John Doe.

- April 9, 2019 – John Doe and his advisor attended an investigation interview.

- April 14, 2019 – Non-party student, C.B., submitted a statement to Tulane regarding her memory of the events related to Tulane's student conduct investigation.

7

- April 16, 2019 – Non-party student, J.G., submitted a statement to Tulane regarding his memory of the events related to Tulane's student conduct investigation.

- September 23, 2019 – Tulane notified John Doe and Jane Roe of student conduct investigation findings.

- September 30, 2019 – John Doe submit appeal to Tulane of student conduct investigation findings.

- October 29, 2019 – John Doe is notified by Tulane of appeal outcome.

- November 5, 2019 – John Doe filed the instant lawsuit against Tulane.

The Privilege Log produced by Plaintiff to Defendant on December 6th contains ten (10) entries for e-mail communications with attachments. (*See* Exhibit A). Every entry on the privilege log is between Plaintiff's counsel and three different non-party students: J.G, C.B. and S.H. *Id.* Plaintiff's counsel has confirmed that they do not represent any of the non-party students listed on Plaintiff's privilege log. (*See* Exhibit B). Further, none of these students are adverse parties in this lawsuit against Tulane. The date range for the first nine entries on the privilege log are for the time period of 3/27/19 – 4/5/19, with the final entry for a communication on 11/3/19. (Exhibit A). The first nine communications listed on the log occurred during Tulane's active investigation of student conduct matter no. 2018313802, and every communication on the log occurred before Plaintiff filed the instant lawsuit on November 5, 2019. (Rec. Doc. 1).

Pursuant to the privilege log and correspondence from Plaintiff's counsel on December 11th, each entry on the privilege log is alleged attorney work product. (*See* Exhibits A-B). Indeed, Plaintiff's counsel confirmed in his correspondence that the communications on the privilege log are "not attorney-client." (Exhibit B). As detailed herein, Defendant respectfully submits that the non-party student communications and related attachments listed on Plaintiff's privilege log are not work product, and such communications and attachments are subject to

8

production to Defendant.

The work-product doctrine protects from discovery documents and other tangible things prepared by a party or representative of the party (e.g. attorney, consultant, agent or investigator) in anticipation of litigation. *Windmeyer v. State Farm Fire & Cas. Co.,* 2014 U.S. Dist. LEXIS 115221, at \*7 (E.D.La. Aug. 19, 2014). The purpose of the doctrine is to protect "the essential privacy of an attorney's mental impressions, legal theories and strategies as he prepares a client's case." *Hickman v. Taylor,* 329 U.S. 495, 511 (1947). However, the law is clear that this doctrine "does not provide a device to hide the existence or substance of material, discoverable facts, documents or other evidence." *Gilmore v. Stalder,* 2008 U.S. Dist. LEXIS 39822, at \*11 (W.D.La. May 16, 2008) (citing *Upjohn Co. v. U.S.,* 449 U.S. 383 (1981); *U.S. v. Nobles,* 422 U.S. 225 (1975)). As such, the doctrine does <u>not</u> protect documents assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes. *Windmeyer,* 2014 U.S. Dist. LEXIS 115221, at \*7. The party seeking protection under the work-product doctrine has the burden to prove the documents at issue were prepared in anticipation of litigation. *Id.*; *see also Hickman,* 329 U.S. at 511 ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may be properly had.").

The Fifth Circuit has indicated that a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis,* 636 F.2d 1028, 1039 (5th Cir. 1981). While involvement of an attorney is relevant, it is not dispositive as to the "in anticipation of litigation" issue. *Windmeyer,* 2014 U.S. Dist. LEXIS 115221, at \*8. Moreover, the fact that a party may anticipate litigation arising from an incident "does <u>not</u> automatically insulate all documents from

9

discovery as work-product." *Id; see also Becnel v. Broadway Servs.,* 2018 U.S. Dist. LEXIS 199446, at *8 (E.D.La. Nov. 26, 2018) ("When a party is involved in an event that could potentially lead to litigation, however, all documents subsequently prepared with regard to that event are not necessarily immune from discovery."). Indeed, "[i]f the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Windmeyer,* 2014 U.S. Dist. LEXIS 115221, at *8. In short, the "essential question is what was the primary motivating purpose behind the creation of the document." *Becnel,* 2018 U.S. Dist. LEXIS 199446, at *9.

In addition, the work product doctrine extends only to documents and tangible things assembled and brought into being in anticipation of litigation; the protection does not extend to the underlying facts relevant to the litigation. *EEOC v. Jamal & Kamal, Inc.,* 2006 U.S. Dist. LEXIS 66294, at *6 (E.D.La. Sept. 18, 2006). Factors considered by courts include whether (1) counsel has been retained, (2) the retained counsel was involved in the generation of the documents, and (3) the document was created out of a routine practice or in connection with particular circumstances. *Hercules Lifeboat Co., L.L.C., v. Rice,* 2012 U.S. Dist. LEXIS 141904, at *3 (W.D.La. Sept. 26, 2012). Finally, "the mere fact that litigation is pending does not transform everything done by or for a party into work product worthy of protection." *Piatkowski v. Abdon Callais Offshore, L.L.C.,* 2000 U.S. Dist. LEXIS 12067, at *6 (E.D.La. Aug. 11, 2000).

Here, as shown on Plaintiff's privilege log, the first nine entries are related to e-mail communications between Plaintiff's counsel and two non-party students (J.G. and C.B.) during the time period of 3/27/19-4/5/19. (Exhibit A). These dates are significant because Tulane's student conduct investigation began a week earlier on or about March 20, 2019, and Tulane's

10

first meeting with John Doe occurred one day earlier on March 26, 2019. Thus, Tulane's investigation was only in its early stages during the time when these nine communications occurred. Moreover, these two non-party students subsequently submitted statements to Tulane on April 14th and April 16th (within a week or so of the privilege log communications) regarding their alleged memory of the events related to Tulane's student conduct investigation.

Thus, these e-mail communications and related attachments/drafts during this time period were more likely than not directly related to Tulane's investigation of John Doe for student conduct matter no. 2018313802, not the lawsuit that was filed by Plaintiff months later on November 5, 2019. Indeed, the time period context of these communications appears to indicate that the e-mail communications and related attachments/drafts were directly related to potential requests by Plaintiff's counsel to review and/or edit fact statements that were to be submitted by these non-party students to Tulane as factual evidence to guide and be considered by Tulane during the course of its investigation of student conduct matter no. 2018313802. The likelihood of this context for the privilege log communications is demonstrated by at least four of the communications on the privilege log which show the communications were initiated by the non-party student to Plaintiff's counsel. Thus, at a minimum, such email communications and related attachments/drafts were drafted by the non-party student, not Plaintiff's counsel.

Importantly, to the extent the non-party communications and related drafts/attachments merely recite facts within the non-party student's knowledge of events related to Tulane's student conduct matter no. 2018313802, such communications do not contain the mental impressions or legal strategy of Plaintiff's counsel and are not protected by the work product doctrine. *Walker v. George Koch Sons, Inc.,* 2008 U.S. Dist. LEXIS 81919, at *17 (S.D. Miss. Sept. 18, 2008) (finding affidavits merely recited relevant facts within the affiants' personal

11

knowledge, and did not reveal an attorney's mental impressions or legal strategy). In fact, the jurisprudence of this circuit has stated:

> The fact that counsel for plaintiffs drafted the Affidavits (as is generally the case for affidavits prepared in litigation) does not make them attorney work product immune from disclosure. An affidavit, after all, purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.

*Id.* at *17. Moreover, this Court has also specifically found "that an attorney's memorialization of events, effectively acting as a stenographer, does not fall within the sphere of documentation protected by the work product privilege." *EEOC v. Jamal & Kamal, Inc.,* 2006 U.S. Dist. LEXIS 66294, at *2 (E.D.La. Sept. 18, 2006) (ordering production of affidavit prepared by attorney for witness's signature based partly on attorney's recollection of witness's testimony and partly on attorneys' notes, as the affidavit did <u>not</u> detail the attorney's theory of the case and was only a memorialization by the attorney of events reported by the witness); *see also Diaz v. Devlin,* 327 F.R.D. 26, 30 (D. Mass. Aug. 28, 2018) ("[A]ffidavits are normally not protected by the work-product doctrine for the very reason that an affidavit purports to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.").

There is no evidence on the privilege log, especially considering the time period in which almost all the communications occurred, that the e-mail communications and related attachments/drafts by the non-party students was to aid in possible future litigation. In fact, the first nine communications occurred within a week or so after Tulane initiated its student conduct investigation, which was months before Tulane released its investigation findings on September 23rd and months before Plaintiff filed the instant lawsuit on November 5th. As such, the primary motivating purpose for the creation of these non-party student communications and related attachments/drafts appears to have been in response to Tulane's student conduct investigation. *See, e.g., Becnel,* 2018 U.S. Dist. LEXIS 199446, at *8 (finding no evidence that primary

motivating purpose for preparation of challenged affidavit was to aid in possible future litigation, and finding affidavit was prepared to assist in a state Securities Division investigation).

To the extent Plaintiff's counsel anticipated or believed at that time (approximately one week or so after the initiation of a multi-month investigation) that future litigation by John Doe against Tulane was likely to occur, there simply is <u>no</u> evidence that these communications and related attachments/drafts were prepared for the primary purpose of potential future litigation, such that these communications and related attachments/drafts would not otherwise have been created. To the contrary, the relevant factual context shows that these communications and related drafts/attachments arose primarily because of Tulane's student conduct investigation and would not have been created at that time (or at all) if not for Tulane's investigation and the request for fact statements by fact witnesses regarding the alleged events at issue in student conduct matter no. 2018313802. *See, e.g., In re Complaint of Am. River Transp. Co.,* 2017 U.S. Dist. LEXIS 60255, at *8 (E.D. Mo. Apr. 20, 2017) ("[T]he work product doctrine does not extend to verbatim, non-party witness statements."); and *Ford Motor Co. v. Edgewood Props., Inc.,* 257 F.R.D. 418, 422 (D.N.J. 2009) (the fact an attorney had a role in preparing a non-party witness affidavit did not, in and of itself, convert factual testimony by the non-party into work product). The fact that these attachments/drafts now (months later) have a secondary purpose of responsiveness to the instant litigation does not belatedly change the fact that the primary reason the attachments/drafts were created in the first place was to aid Tulane's investigation, not a future, yet unknown potential lawsuit that did not actually arise until several months later. *See, e.g., Lewis v. Keen Transp., Inc.,* 2011 U.S. Dist. LEXIS 19787, at *14 (N.D. Ill. Feb. 28, 2011) (affirming production of documents created during defendant's investigation of a workplace incident and several months before lawsuit was filed, as there was no evidence of "an identifiable

13

resolve to litigate before that date").

Accordingly, Defendant respectfully requests *in camera* review of Plaintiff's unredacted privilege log and all communications and related attachments/drafts referenced on the privilege log to determine if the documents on the privilege log actually contain the mental impressions, opinions, and legal theories of Plaintiff's counsel, rather than communications and statements of purely factual information void of legal advice or the legal theories of counsel. Defendant further requests that after such review that Plaintiff be ordered to promptly produce all communications and related attachments/drafts listed on the privilege log that the Court determines are not subject to work product protection.

## V.    CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that this Court grant Defendant's Re-Urged Motion to Compel Discovery. Accordingly, after *in camera* review by the Court, Defendant requests that this Court issue an order requiring Plaintiff to promptly produce unredacted text messages, the non-party student e-mail communications and attachments on Plaintiff's privilege log, and responsive documents in native format (to the extent Plaintiff has not already done so at the time of the filing of this re-urged motion to compel), in full and complete response to Defendant's First Requests for Production of Documents, as detailed herein.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By*:      /s/ M. Nan Alessandra*
      M. NAN ALESSANDRA, T.A. (#16783)
      KIM M. BOYLE (#18133)
      365 Canal Street – Suite 2000
      New Orleans, LA   70130-6534
      Telephone: (504) 566-1311

14

Telecopier: (504) 568-9130
Email: nan.alessandra@phelps.com
kim.boyle@phelps.com

**ATTORNEYS FOR DEFENDANT, THE
ADMINISTRATORS OF THE TULANE
EDUCATIONAL FUND**

15